## HELEN C. SALSBURY v. R. T. BLACK.

ERROR TO THE COURT OF COMMON PLEAS OF LACKAWANNA COUNTY.

Argued February 24, 1888—Decided March 12, 1888.

The defendant in an ejectment bought the land in dispute at sheriff's sale, under a verbal agreement with the plaintiff, as whose property it was sold and who had acquired title after the entry of the judgment from which the process issued, that he would buy for the plaintiff with the right to redeem within a period limited, the latter furnishing no portion of the purchase money: *Held*,

1. That no trust resulting ex maleficio was created, and that the contract, resting in parol, was within the statute of frauds and unenforceable.
2. That, even though the defendant admitted the right of the plaintiff to redeem within a limited period, equity would not enforce the right three years after the period expired, when in the meantime the property had been improved and was greatly increased in value.

Before GORDON, C. J., PAXSON, STERRETT, GREEN and WILLIAMS, JJ.; TRUNKEY and CLARK, JJ.; absent.

No. 146 January Term 1888, Sup. Ct.; court below, No. 171 January Term 1884, C. P.

On November 9, 1883, an action of ejectment was brought by Helen C. Salsbury against R. T. Black, to recover a house and lot in Scranton.

At the trial on December 1, 1887, it appeared that in December 1874, the plaintiff had acquired the property in dispute subject to the lien of a mortgage, held by E. B. Sherwood, for $2,000; a judgment, held by R. T. Black, for $2,120; another judgment in the name of Thomas Moore, for $1,249.54. Of this last lien she was not aware, when she purchased. R. T.

Black was tenant upon the property. On December 21, 1878, under process issued upon Mr. Black's judgment, the property was sold at sheriff's sale and purchased by him, under an arrangement, as was claimed upon the evidence, that he would bid the property off and hold it for Mrs. Salsbury, to be reconveyed upon payment by her of an amount sufficient to liquidate the then existing liens and costs. The facts fully appear in the opinion.

The court, KNAPP, J., charged the jury and answered the points presented as follows:

The case which you have been occupied in listening to for two days has now reached its close. Under all the testimony that has been offered by the parties, I shall instruct you, as a matter of law, that the plaintiff cannot recover. If we have made a mistake in this it can be corrected by a higher court. The responsibility is not upon you but upon the court.

The plaintiff and defendant have presented certain points upon which they ask the court to charge you. I will read these points and answer them.

The defendant's points are as follows:

1. That the act of April 22, 1856, P. L. 533, requires that all trusts in real estate shall be in writing, signed by the party holding the title therefor, and the plaintiff having failed to prove the existence of any written agreement, your verdict must be for the defendant.

Answer: Under the evidence in this case this point is affirmed. [1]

2. That resulting trusts can be created only by the payment of a part of the purchase money by the party claiming to be cestui que trust, or by fraud at the time of the purchase on the part of the purchaser at a sheriff's sale, and both these requirements being entirely wanting in this case, your verdict must be for the defendant.

Answer: This point is affirmed. [2]

3. That the plaintiff having failed to prove that Black used any fraudulent means in obtaining the title at sheriff's sale, and also having failed to show payment by her of any portion of the purchase money, she has failed to establish a trust ex maleficio, and your verdict must be for the defendant.

Answer: This point is affirmed.[3]

4. That to establish any trust in favor of plaintiff in this case, she must show what the agreement creating the same was by testimony that is clear, explicit and unequivocal, and having failed to show either the amount to be paid, time of payment or any other clear and definite arrangement, your verdict must be for the defendant.

Answer: This point is affirmed.[4]

5. That in any event, by her laches in neglecting for more than three years to notify the defendant of her intention to claim the property, during which time the defendant had expended large sums of money in repairs and other expenses, she has lost any equity to which she might have been entitled, and cannot recover.

Answer: Upon this point we say, that under our answers to the previous points, it becomes unnecessary to either affirm or refuse this point.[5]

6. That under the facts as proven in this case, and the law, plaintiff must reimburse the defendant for whatever reasonable outlays he has made in the maintenance, repair and improvement of the property described in the writ.

Answer: It becomes unnecessary also to answer this point.

7. That under the law and evidence, your verdict in this case must be for the defendant.

Answer; This point is affirmed.[6]

The plaintiff has presented the following points, which are refused:

1. If the jury find from the evidence that the plaintiff, Helen C. Salsbury, has a deed for the land in question, and was the owner of the house and lot before and at the time the land was sold by the sheriff on execution issued by R. T. Black upon his judgment versus John L. Hull, a former owner of the real estate, and that Mrs. Salsbury was induced to confide in the verbal promise and agreement of R. T. Black that he would attend the sheriff's sale for her and bid off the land for her, and in consequence of said verbal promise and agreement made by Black he obtained the title to the same, by the sheriff's deed, a denial by Black of his promise and agreement, and refusal to let Mrs. Salsbury have the property is such a fraud as will raise a constructive trust and make Black a trustee ex maleficio, and the verdict should be for the plaintiff.[7]

2. That if the jury find that Mrs. Salsbury had a deed from George Coray for the land in question, and that she was induced to confide in the verbal promise and agreement of R. T. Black that he would attend the sheriff's sale and bid off the land for her, and that in consequence he was allowed to obtain a legal title to the same, his denial of the confidence is such a fraud as will make him a trustee ex maleficio, and the verdict should be for the plaintiff.[8]

3. That if the jury find from the evidence that Mrs. Salsbury was the owner of the land in question before and at the time of the sheriff's sale, and that she paid the interest on the Sherwood mortgage at Black's request to stop the foreclosure of that mortgage, upon the verbal promise and agreement by Black that if she would pay said interest he would sell the land upon his lien at sheriff's sale and buy the land for her, and after the sheriff's sale told her he had done as he had before told her, and in consequence of the confidence and trust she reposed in him by reason of said promise and agreement, Black became the holder of the legal title obtained at said sheriff's sale, his refusal thereafter to reconvey the title to her is such fraud as would make him a trustee ex maleficio and the verdict should be for the plaintiff.[9]

4. That if the jury find from the evidence that R. T. Black, the defendant, is a trustee ex maleficio, and that the plaintiff is entitled to the verdict, the defendant is not to be allowed for any improvements he may have put upon the property.[10]

5. That in case of an ejectment to enforce a constructive trust when the legal title has been fraudulently obtained, a previous tender of reimbursement is not necessary. All the defendant would be entitled to is the money actually paid out by him to obtain the title; and as this defendant since he thus obtained the title has enjoyed the rents and profits of the property in question he will not be entitled to interest on the money so expended by him; and the jury, in case the verdict be for the plaintiff, should fix a reasonable time for the payment of the same.[11]

6. That a trust arising from the fraud of the holder of the title is one by operation of law; and where one procures a title which he could not have obtained except by a confidence reposed in him and abuses the confidence, he becomes a

trustee ex maleficio. Such trust arises by implication and construction of law, and is within the proviso of the 4th section of act of April 22, 1856.[12]

7. That if under all the facts in evidence in this case the jury shall find in favor of the plaintiff, the verdict should be for the plaintiff for the land described in the writ, upon condition that she pay into court for the use of the defendant within three months after the rendition of the verdict the sum of $4,765, the amount expended by Black to obtain the legal title; otherwise the verdict to be set aside by the court, and judgment entered for defendant.

Gentlemen of the jury, you will render your verdict in favor of the defendant.

A verdict for the defendant having been returned and judgment entered thereon, the plaintiff took this writ assigning for error:

1. The direction to find a verdict for the defendant.

2–6. The answers to the defendant's points.[2 to 6]

7–12. The refusal of the plaintiff's points.[7 to 12]

*Mr. G. M. Harding* and *Mr. W. W. Watson*, for the plaintiff in error:

1. The plaintiff was not the defendant in the execution; she was the holder of the legal title before and at the time of the sheriff's sale to R. T. Black. The debt upon which the sale was effected was not her debt; she did not contract or owe either of the three debts which were liens upon the property at the time of the sale. The case, therefore, was not within the rulings of Hogg v. Wilkins, 1 Gr. 67; Barnet v. Dougherty, 32 Pa. 371; Kellum v. Smith, 33 Pa. 158.

2. The plaintiff was the owner of the property; Mr. Black was her tenant; she placed a trust and a confidence in him which he violated. There are two elements, therefore, in the transaction; first, the ownership of the land, which is the equivalent of paying for it; second, the absolute fraud characterizing the non-fulfilment of the promise which led the owner to part with it. Thus, there is a trust ex maleficio, within the proviso to § 4, act of April 22, 1856, P. L. 533, excepting trusts or confidences arising by implication or construction of law:

Beegle v. Wentz, 55 Pa. 369; Hoffman v. Strohecker, 7 W. 86; Sheriff v. Neal, 6 W. 534; McCulloch v. Cowher, 5 W. & S. 427; Wolford v. Herrington, 86 Pa. 39; Boynton v. Housler, 73 Pa. 453; Cook v. Cook, 69 Pa. 443; Christy v. Sill, 95 Pa. 380.

3. The statute of frauds is a salutary act, but to suffer it to become instrumental in the commission of such a palpable breach of faith, would make it the source of gross injustice. This the authorities forbid to be done: Duff v. Wilson, 72 Pa. 442; Seylar v. Carson, 69 P. 81; Rankin v. Porter, 7 W. 387.

*Mr. Edward N. Willard* and *Mr. Edward B. Sturges* (with whom was *Mr. Everett Warren*), for the defendant in error:

1. In causes of this character the judge sits as a chancellor and the case presented must satisfy him that the equity is clearly, not doubtfully, established: Ballentine v. White, 77 Pa. 27; Faust v. Haas, 73 Pa. 295; Moore v. Small, 19 Pa. 461. The proof to establish such a trust as was set up, must be full, clear and convincing: McBarron v. Glass, 30 Pa. 133; Barnet v. Dougherty, 32 Pa. 371; Moss v. Culver, 64 Pa. 424; Earnest's App., 106 Pa. 310; McGinity v. McGinity, 63 Pa. 38; Brickell v. Earley, 115 Pa. 473.

2. Even if it be conceded that the defendant did promise to purchase in the plaintiff's name, or for her, the breach of that agreement did not make him a trustee ex maleficio. The fraud, if any, was not in the promise, not at the sale, but in its subsequent breach. Equity will not decree such a purchaser to be a trustee, unless there is something more in the transaction than the mere violation of a parol agreement: Kellum v. Smith, 33 Pa. 158; Kimmel v. Smith, 117 Pa. 183.

Opinion, MR. JUSTICE PAXSON:

This was an action of ejectment. The defendant claimed title by virtue of a sheriff's deed. The plaintiff claims under a parol trust, and alleges that it comes within the exception of the act of 1856, for the reason that it is a resulting trust.

The facts, stating them in the most favorable way for the plaintiff, are substantially as follows: At and for some time before the sheriff's sale, the plaintiff was the owner of the house in question. The defendant occupied it as her tenant. The rent was paid to her brother. There were three liens on

the property, viz. : 1, a mortgage of $2,000, held by a Mrs. Sherwood; 2, a judgment for $2,000, held by the defendant; 3, a judgment in favor of Thomas Moore for $1,249.54. The interest upon all these liens was largely in arrear. In June, 1878, the defendant ascertaining that the Sherwood mortgage was about to be foreclosed, notified the plaintiff, who lived out of the county, of that fact. She met the defendant in Wilkes-Barre shortly thereafter, and an arrangement was made by which the arrears of interest due on the Sherwood mortgage were paid and the proceedings stopped, the defendant advancing the sum of $250 for that purpose. The plaintiff alleges that at this interview the defendant agreed to sell the property on his judgment, and buy it in for her. This would leave it subject to the Sherwood mortgage. The defendant denies this, and says he told her if the interest was paid upon the mortgage, he would let his judgment stand for two years at six per cent. Be that as it may, the property was sold by the sheriff upon defendant's judgment in the following December. The plaintiff had notice of this sale : she came to Scranton on the morning thereof; had an interview with the defendant previous to the sale, at which it was agreed that he would buy the property for the plaintiff. He purchased it accordingly, and informed her of it the same evening. The defendant alleges that plaintiff was to have until the 1st of April following to redeem. The plaintiff swears that no time was fixed. The defendant purchased the property, and paid the costs of the sale, taxes, etc., with his own money. The plaintiff did not contribute a dollar towards either the purchase money or the expenses; nor did she offer to do so for three years, and even then she made no tender of the money. When the property was sold at the sheriff's sale, the times were hard, and the price of real estate very low in Scranton. The house was old and very much out of repair. At the time this ejectment was brought, the defendant had expended about seven thousand dollars in repairing the house and remodeling it, until it is now a comparatively new house, and greatly enhanced in value thereby, as well as by the advance in the values of real estate in Scranton. A considerable amount of this expenditure was made prior to any demand by the plaintiff for a re-conveyance.

Under these facts, it is not difficult to apply the law.   There was no resulting trust arising from the payment of the purchase money, for the plaintiff had not paid any portion of it. Nor was there any such fraud in obtaining the title as would create a resulting trust.   It is now settled by repeated decisions that if one buys property at sheriff's sale, and verbally agrees to hold it in trust for the defendant, with a right of redemption in the defendant within a limited period, it is a contract resting in parol merely, and does not transfer any title to the land: Fox v. Heffner, 1 W. & S. 372 ; Kellum v. Smith, 32 Pa. 158.   In the case last cited, it was said by Justice STRONG : " When a purchaser at a sheriff's sale promises to hold for the debtor, and afterwards refuses to comply with his engagement, the fraud, if any, is not at the sale, not in the promise, but in its subsequent breach. That is too late." The plaintiff here, although not actually the judgment debtor, occupied the position of one.   She owned the property bound by the judgment.   Although not liable for the judgment, her property was, so that her case comes within the principle of those cited.   The latest case upon this subject is Kimmel v. Smith, 117 Pa. 183, decided last October in the Western district.   The subject is there treated exhaustively by our brother GREEN, and many of the authorities cited.   I need not add to what was there better said.

Not only is this case barren of a resulting trust, but the testimony fails to disclose any fraud, legal or actual.   The defendant admits that the plaintiff could have redeemed up to the first of April following the sale.   The plaintiff says, no time was fixed.   Granted.   The law then fixes a reasonable time.   Equity will not give an unlimited time to redeem.   It will not allow a person claiming such a right to lie by for three years, taking the chances of the market, and then when the property has been repaired and greatly increased in value by the change of times, come forward and demand a conveyance.   To permit it in this case would allow this plaintiff to get back a property worth $15,000 for one third of that sum.

The allegation that the defendant was paid out of the rents is not sustained by the evidence.   It was not proved that any rent was due at the time of the sheriff's sale.   On the contrary, he had advanced $250 out of rent subsequently falling due, to

enable the plaintiff to pay the interest on the Sherwood mortgage.

What has been said substantially covers all the assignments of error except the last one. This will not be discussed because not in conformity with the rules of court. I have looked at it sufficiently to say, however, that if the deposition was improperly rejected, it did the plaintiff no harm. Her case was too hopelessly bad to be cured by this deposition.

Judgment affirmed.