# Llewellyn *v.* The Sunnyside Coal Co., Appellant.

*Real property—Title to land—Contracts for the sale of land—Written contracts—Statute of frauds—Ejectment.*

1. The Statute of Frauds requires that the authority of an agent who undertakes to bind a principal by a contract for the sale of land shall be shown by a writing, and where a subsequent ratification by the principal of the acts of the agent is relied upon to establish a valid conveyance, it must be evidenced in the same way.

2. The requirement of the Statute of Frauds that contracts for the sale of land shall be in writing can only be met by proof in writing of the complete contract. An instrument which is not self-sustaining and which requires verbal evidence to supply any essential part is not a compliance with the statute.

3. A receipt for the purchase money of land containing nothing descriptive of the subject of the agreement of sale, disclosing nothing as to who the parties to the agreement are and silent as to the terms of payment, is not a sufficient memorandum of a contract for the sale of land within the meaning of the Statute of Frauds.

4. Two papers which are relied upon to establish a contract for the sale of land, neither of which contains any indication of any association with the other, so that parol evidence would be required to establish such association, will not constitute a contract for the sale of land within the meaning of the Statute of Frauds.

5. In an action of ejectment plaintiff claimed title by regular deeds of conveyance from a grantor under whom defendant claimed title by a prior conveyance; it appeared that defendant relied upon a written instrument purporting to be a contract, for the sale of the land to defendant's grantor, signed by defendant's grantor but

not signed by plaintiff's grantor, and a written receipt, distinct and separate from the contract, for $100, in payment for land and leases sold to defendant's grantor "as per agreement." The receipt was signed by a third person as attorney-in-fact for plaintiff's grantor; no written authority from plaintiff's grantor constituting the signer of the receipt her attorney-in-fact was shown; the court excluded the evidence and directed a verdict for plaintiff. *Held,* no error.

Argued Oct. 7, 1913. Appeal, No. 91, Oct. T., 1913, by defendant, from judgment of C. P. Cambria Co., June T., 1910, No. 491, on directed verdict for plaintiff in case of D. J. Llewellyn v. The Sunnyside Coal Company. Before FELL, C. J., MESTREZAT, POTTER, ELKIN, STEWART and MOSCHZISKER, JJ. Affirmed.

Ejectment for the recovery of lands in Cambria County. Before BOUTON, P. J., specially presiding.

The opinion of the Supreme Court states the facts.

Verdict for plaintiff by direction of the court and judgment thereon. Defendant appealed.

*Errors assigned* were in excluding defendant's evidence of title referred to in the opinion of the Supreme Court and in directing a verdict for plaintiff.

*F. J. O'Connor,* with him *Francis P. Martin, Forest* and *Percy Allen Rose,* for appellant.

*Philip N. Shettig,* with him *H. W. Storey* and *M. D. Kittell,* for appellee.

OPINION BY MR. JUSTICE STEWART, January 5, 1914:

Both parties to the controversy claim title to the land under and through Mrs. J. C. Yeagley; the plaintiff by a regular deed of conveyance from Mrs. Yeagley, the defendant by virtue of an alleged earlier contract of purchase and sale between Mrs. Yeagley, acting by attorney-in-fact, and one Daniel Cauffiel. Cauffiel never

acquired the legal title, but, claiming as equitable owner, as such conveyed to the defendant. Defendant's rights, therefore, are to be determined by Cauffiel's equities; if Cauffiel could not have enforced these so as to require a legal conveyance to himself from Mrs. Yeagley, the defendant is without standing to resist plaintiff's right of possession. Conceding the facts with respect to the alleged bargain and sale between Mrs. Yeagley and Cauffiel to be as contended for by the defendant, the transaction at most was a parol contract for the sale of land. There was no agreement in writing signed by Mrs. Yeagley or by any one acting in her behalf. What was relied upon as evidencing a sale was, first, a written instrument purporting to be a contract between Mrs. Yeagley and Cauffiel for the sale and purchase of the land, including other property as well, for the consideration of $8,000, signed by Cauffiel but not signed by Mrs. Yeagley; and, second, a written receipt wholly distinct and separate from the instrument above referred to, for $100.00 "in payment on land and leases sold to Daniel Cauffiel, as per agreement," signed "Joseph H. Berlin, Attorney-in-Fact for Mrs. Yeagley." No written authority from Mrs. Yeagley constituting Berlin her attorney-in-fact was shown. Manifestly, the first of these written papers by itself would avail nothing in any effort to enforce a specific performance. Not only was Mrs. Yeagley not a party to it, but, so far as appears, she never saw it. No more would the second; for, aside from the fact that no authority in Berlin to sign such receipt is shown, the receipt contains nothing descriptive of the subject of the agreement; it discloses nothing as to who the parties to the agreement were; and it is silent as to the terms of payment. It evidences that an agreement of some kind had been made, but discloses nothing beyond. Were the receipt signed by Mrs. Yeagley instead of Berlin, its insufficiency to support a decree of specific performance would be none the less manifest; therefore, the effort on the trial of the case to

show ratification of what Berlin had done as her at-torney-in-fact in signing the receipt, calls for no con-sideration here.  For the purpose of the case we may treat the paper as a receipt signed by Mrs. Yeagley her-self.  We then have the same state of facts as shown in Soles v. Hickman, 20 Pa. 180, and the ruling there is conclusive against the defendant's contention here.  The parallel is too obvious to be escaped.  The opinion of the court in that case recites the facts and declares the law applicable in a way not to be misunderstood.  It pro-ceeds:

"The question here is, will the court enforce specific performance of an agreement for the sale of land, of which there is no written evidence except a receipt for part of the purchase money, defining the lot sold, but not defining the price or any other terms of sale?  The statute of frauds answers the question in the negative, when it declares that no estate granted by parol shall, either in law or equity, have any other effect than as an estate at will.  This receipt is evidence that there was an agreement of some sort about the lot, and that it has been partly performed, but it does not inform us of the terms of the agreement and without this it is impossible to enforce it.  With or without the statute of frauds, an agreement with unknown terms is void.  We may know that there was an agreement, but without proper evi-dence of its terms our knowledge is useless, and such is this case.—A contract is as much void when the consid-eration, as when the subject, is undefined.  Where the parties have left authority uncertain, the contract is legally incomplete and, therefore, void.  When the law requires the contract to be in writing, it means that the complete contract must be proved by writing.  That is not a written contract that is not self-sustaining.  It is verbal if it requires verbal testimony to sustain it by proving any essential part of it."

Counsel for appellant would associate as one these two written papers, an article of agreement for the sale

signed by Cauffiel but unsigned by Mrs. Yeagley or any
one on her behalf, and the receipt signed by Berlin; and
they argue, perhaps correctly enough, that every ele-
ment essential to a specific performance may thus be
found in writing. But on what ground can they be thus
associated? The answer they make is that the article of
agreement as written expresses the parol contract of
sale and purchase as made by Berlin, the agent, and the
receipt made by Berlin, by its reference, shows his rati-
fication of the agreement. The insufficiency of the
answer is apparent. In the first place the association
of the two papers would necessarily have to be estab-
lished by parol evidence, since there is nothing intrinsi-
cally in either to indicate any association with the other
with the degree of certainty required. In the second
place, were they to be treated as one, and the article of
agreement allowed the weight it would be entitled to
had it been actually executed by Berlin, signing himself
as agent for Mrs. Yeagley, it would come to nothing ex-
cept as Berlin's authority to contract for the sale of Mrs.
Yeagley's land appeared in writing.

"By our acts of Assembly an authority to sell land,
must be in writing,—therefore, if the sale had rested
solely on parol authority, it would have been void."

TILGHMAN, C. J., in VanHorne v. Frick, 6 S. &. R. 90.

But it is further argued that this was but preliminary
to showing acts of ratification by Mrs. Yeagley of the
acts of her agent. A sufficient answer here is that any
such ratification would necessarily rest in parol, and
therefore would not avail, since it is well settled that
where a previous authority in writing is required by law
a subsequent recognition can be effective only as it is
evidenced in the same way.

"It would be in vain for the statute to declare that the
agent should originally be constituted in writing, if
courts of law should hold that a subsequent parol recog-
nition of the acts of the agent, not constituted originally
in writing, would satisfy the law. This would only re-

quire the form of perjury to be changed to accomplish all the evils the law deprecates."

This was said by President Judge KING in Parrish v. Koons, 1st Parsons Equity Cases, 79.

We find nothing in the offers made by the defendant sufficient to take the case out of the operation of the statute, and it follows that the court committed no error in giving binding instructions for the plaintiff. There was nothing developed in the case that would have justified a decree of specific performance of the alleged contract. In what we have said we have sufficiently passed upon the several assignments of error. These are overruled and the judgment is affirmed.